IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:10-CR-110-TCB-CCH |
| ZELJKO ZEKIC | : | |
| | : | |

## <u>REPORT AND RECOMMENDATION</u>

Defendant is charged in the indictment with possessing a document procured by fraud which is prescribed by statute or regulation as necessary for entry into the United States or as evidence of authorized stay or employment in the United States. This action is before the Court on Defendant's Motion to Suppress Evidence [18] which seeks to suppress not only statements made by Defendant (the "Motion to Suppress Statements" [18-1]) but also documentary and other evidence seized at his home on the execution of a search warrant (the "Motion to Suppress Physical Evidence" [18-2]).

For the reasons stated below, it is **RECOMMENDED** that both the Motion to Suppress Statements [18-1] and the Motion to Suppress Physical Evidence [18-2] be **DENIED.**

## MOTION TO SUPPRESS STATEMENTS

In his motion Defendant states that he was interviewed by agents with Homeland Security, Immigration and Customs Enforcement at his home on March 2, 2010. He contends that he was in custody during this interview and was interrogated but that he did not receive the warnings required under Miranda v. Arizona, 384 U.S. (1966).

Over the objection of the Government [31] the Court held a hearing on Defendant's motions on July 29, 2010. The principal reason that the Court held this hearing was because defense counsel argued that Defendant's inculpatory statement was made while he was in custody and entitled to Miranda warnings, and therefore, that evidence of his status at the time of his statement needed to be developed [33]. At the hearing on his motions, however, Defendant did not present any evidence or cross examine the Government witnesses with respect to the statements Defendant wanted suppressed. As a result, there was no evidence developed which supported the suppression of Defendant's statement. Nevertheless, his counsel declined to withdraw his Motion to Suppress Statements, agreed to brief it and insisted that the Court rule on it. Transcript of July 29, 2010 hearing (hereinafter "Tr.") at 47. Despite her agreement to brief the issue, defense counsel did not argue this issue in her Post-

2

Hearing Brief or Post-Hearing Reply Brief.  Thus, this motion [18-1] should be **DENIED** as abandoned.  See Access Now, Inc. v. Sw. Airlines Co., 385 F. 3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.).

Further, it appears that Defendant may have intended to withdraw this argument in his Post-Hearing Brief.  At the bottom of page six of that brief defense counsel notes that Defendant had "challenged the validity of statements" and then states that "Undersigned withdraws this claim."  Assuming defense counsel meant "the validity of statements" to mean their admissibility, the Motion to Suppress Statements [18-1] should be denied not only because it was abandoned, but also because it was withdrawn.

Finally, this motion should be denied on its merits.  The only evidence presented was that Defendant was interviewed for approximately thirty minutes in the dining room of  his home by two agents, one in street-casual clothes, the other in business attire.  Neither displayed a weapon nor engaged in any acts to coerce Defendant's statements.  Defendant was told at the outset that he did not need to speak to the agents, that speaking to them would be totally voluntary and that, if at any time

3

he wanted the agents to leave he could ask them to do so.  Further, he was told that he was free to leave at any time.  There is no evidence or contention that Defendant was handcuffed or otherwise restrained prior to and during the time he was questioned by the agents.  The interview was conducted in English and in Defendant's native language (Serbo-Croation or Serbe) by one of the interviewers, Mr. MacQueen, who was fluent in Defendant's native tongue.  There was no indication that Defendant did not understand the questions he was asked and his answers were responsive.  Tr. at 19-20;  Gov't Exhibit 4 at 16-19.  Under these uncontested facts a finding is compelled that Defendant was not in custody during his interview, and therefore, was not required to have been given Miranda warnings.  See generally California v. Beheler, 463 U.S. 1121, 1125 (1983); United States v. Muegge, 225 F. 3d 1267, 1269-1270 (11th Cir. 2000).  Further, the uncontested evidence is that Defendant's statements were given knowingly and voluntarily, and Defendant does not contend otherwise.  Accordingly, it is **RECOMMENDED** that, even if not found to have been abandoned and withdrawn, Defendant's Motion to Suppress Statements [18-1] should be **DENIED** on the merits.

## MOTION TO SUPPRESS PHYSICAL EVIDENCE

Defendant's home was searched pursuant to a search warrant issued by a magistrate judge of this Court.  The Affidavit filed in support of that warrant contended that there "was probable cause to believe that a search of 2583 Herndon Road, Lawrenceville, Georgia" would provide evidence of the misrepresentations that Defendant had made in his immigration paperwork that are alleged in the indictment. Paragraph 1, Affidavit of James Andrew Clark at Gov't Exhibit 1 (hereinafter the "Affidavit").  Thereafter, the Affidavit disclosed that investigation had established that 2583 Herndon Road, Lawrenceville, Georgia, was Defendant's home. Affidavit at paragraphs 10-13.

The Affidavit also reveals evidence that Defendant had been a policeman in Bosnia from 1992 through 1997 and that in 1995 he had been mobilized into a military unit, the 2nd PJP Company, and deployed to Potocari in eastern Bosnia where his military unit participated in the slaughter of thousands of Bosnian Muslims. Affidavit at paragraphs 6-8, 9.2.  The Affidavit further states that an investigation had established that Defendant hid this past and contended in his refugee immigration papers that he had been unemployed from 1992 through 1999, Affidavit at paragraph 9.1, and that he had never served in any army, Affidavit at paragraph 9.2.

5

In paragraph 14 of the Affidavit, Agent Clark revealed that he was assisted in his investigation by experts in the Bosnian war and investigators who had investigated "other Bosnians who have attempted to hide their military service in the war so that they could obtain refugee status and residency in the United States." Affidavit at paragraph 14.   Based on these investigations and the advice of the Bosnian war experts, Agent Clark stated in the Affidavit that former Bosnian police officers who served in the military during the war keep "mementos, keepsakes, photos, journals, and souvenirs of their military service that are evidence" of the false statements made on their immigration paperwork. Affidavit at paragraph 14.  Agent Clark then stated that "based on his knowledge and training as an ICE agent and my experience investigating immigration law violations, that individuals who have immigrated to the United States commonly retain documents and other materials from their lives prior to the time they immigrated to the United States."  Affidavit at paragraph 15.

Based on the above Agent Clark stated that there is probable cause to search Defendant's home for documents, keepsakes and other evidence that he provided false information about his past on his immigration papers.  Affidavit at paragraph 16.

Missing from the Affidavit is any connection between the statement that immigrants keep documents, keepsakes and other evidence and the conclusion that

these items are likely to be found in Defendant's home.  In other words, there is no allegation that, based on the affiant's knowledge and expertise, immigrants not only keep evidence of their past, but keep it in their homes.

Defendant contends that the evidence seized from his house should be suppressed because the search warrant did not properly establish probable cause to believe that evidence would be found there.  He first contends that the search warrant was defective because it was based on sweeping generalizations grounded only on opinion evidence.  He also contends that the search warrant was invalid because the Affidavit failed to connect its opinion that Bosnian immigrants kept documents and mementos to their homes, and therefore, that the search warrant failed to establish a nexus between the evidence sought and Defendant's home.

The Government argues that the Affidavit was sufficient to support a finding of probable cause, and that even if it was not, the agents were entitled to rely on it under United States v. Leon, 468 U.S. 897 (1984).

1. Opinion Evidence

Defendant first argues that the generalized opinion evidence contained in the Affidavit was insufficient to establish probable cause.  The Government counters that

an experienced agent's opinion, coupled with probable cause that a person committed a crime, can satisfy its burden.

Defendant cites several cases from outside the Eleventh Circuit in support of his contention that an affidavit containing sweeping generalizations fails to establish probable cause.  In United States v. Schultz, 14 F.3d 1093, 1097-98 (6th Cir. 1994), the Sixth Circuit addressed the introduction of evidence from two search warrants. The application for the first of these warrants contained only an affidavit in which the affiant stated that, based on his training and experience, he believed it was "not uncommon" for records of drug distribution to be maintained in a bank safe deposit box.  Id. at 1097.  The Court ultimately upheld the evidence found under Leon, but noted that "an officer's training and experience may be considered in determining probable cause, . . . [but] it cannot substitute for the lack of evidentiary nexus in this case."  In United States v. Rios, 881 F. Supp. 772, 775 (D. Conn. 1995), the court again upheld the introduction of evidence from a search warrant under Leon, but first invalidated the warrant because the supporting affidavit's mere "general averments" provided "*no facts* to support an inference that evidence of Rios's criminal activity would be found at his home." (emphasis in original).

In the Eleventh Circuit, however, an agent's opinion and experience combined with circumstantial evidence has been found to provide probable cause to search a residence. See United States v. Jenkins, 901 F.2d 1075, 1081 (11th Cir. 1990) ("We hold, however, that a combination of finding of probable cause that Jenkins committed the theft, the fact that the contraband stolen was composed of items which are capable of being hidden in a residence, and the statement of an agent who had ten years' experience investigating bank robberies provided sufficient probable cause . . . ."). Moreover, numerous other Circuits have found generalized opinion evidence sufficient to find probable cause warranting a search of a residence. See, e.g., United States v. Orozco, 576 F.3d 745, 750 (7th Cir. 2009) (distinguishing Schultz and finding that an investigator's opinion that "evidence of drug trafficking and gang activity 'will be found' in [the defendant's] home" was sufficient to establish probable cause); United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999) (probable cause was established by relying on an affiant's "experience in drug trafficking cases and his opinions regarding the habits of drug traffickers" when the affidavit also established that defendant was a drug trafficker); United States v. Robinson, 275 F.3d 371, 378 (4th Cir. 2001) (search warrant was valid where evidence consisted of affiant's statement that "in his experience many perpetrators of criminal acts do not dispose of the clothing worn during the crime"). Significantly, the Tenth Circuit recently

9

emphasized that "magistrate judges may 'rely on the opinion' of law enforcement officers" in issuing search warrants.  United States v. Biglow, 562 F.3d 1272, 1279 (10th Cir. 2009) (quoting United States v. Hargus, 128 F.3d 1358, 1362 (10th Cir. 1997)).

Additionally, several similar search warrants issued in investigations of Bosnian ex-military immigrants show that courts have found a spectrum of direct and opinion evidence sufficient to establish probable cause.  In the affidavits supporting search warrants for Tomislav Jovanovic, Dragisa Jovic, and Igor Osim (see Exhibits 2, 5, and 7, attached to the Government's Response Opposing Defendant's Motion to Suppress [30]), magistrate judges in Florida and South Carolina authorized search warrants supported by affidavits containing direct evidence of defendants' Bosnian or Serbian military service along with expert opinion that such ex-military persons typically retain mementos and keepsakes that provide evidence of their service.  Notably, in United States v. Ikonic, No. 06-CR-340, 2009 WL 497129 (E.D. Wisc. Feb. 26, 2009), the magistrate judge authorized a search warrant submitted with an affidavit containing only direct evidence of immigration fraud along with the affiant's bare statement that "I believe there are . . . documents and memorabilia relating to Nedjo

Ikonic's service in the Serbian police force [in his home]. . . ." <u>See</u> Exhibit 1, attached to the Government's Response Opposing Defendant's Motion to Suppress [30].

In the instant action, the Affidavit established first that a detailed investigation yielded personnel files from the Zvornik Public Security Center and 2nd Romanija Motorized Brigade, as well as documents from the International Criminal Tribunal for the former Yugoslavia and the Bosnian State War Crimes Court at Sarajevo, which confirmed Defendant's involvement with the Bosnian military. Affidavit at paragraphs 5, 7, 9.1, 9.2. These documents belie Defendant's statements on his immigration forms that he had never served in a foreign military. Affidavit at paragraphs 9.4.1-9.5. The Affidavit, therefore, contains clear, direct evidence that Defendant committed immigration fraud.

The Affidavit next established that, in the experience and opinion of the affiant, "individuals who have immigrated to the United States commonly retain documents and other materials from their lives outside the United States . . . ." Affidavit at paragraph 15. Additionally, the affiant stated that he consulted with Department of Homeland Security/Bureau of Immigration and Customs Enforcement historians and

specialists in the Bosnian war,[1] as well as investigators who have prosecuted similar immigration fraud cases, who informed him that, in their experience, "former Bosnian police officers who served militarily in the war maintain mementos, keepsakes, photos, journals, and souvenirs of their military service . . . ." Affidavit at paragraph 14.

Because there is substantial direct evidence that Defendant committed immigration fraud by denying his involvement in the Bosnian military, Defendant's argument asserting the insufficiency of an affidavit grounded on merely generalized opinion evidence is unfounded. Moreover, the Eleventh Circuit has held that opinion evidence, coupled with circumstantial evidence, may provide the requisite indicia of probable cause. See Jenkins at 1081. And, further, the Ikonic search warrant that was supported by an affidavit containing only direct evidence of Bosnian ex-military immigration fraud was found by the magistrate judge to establish probable cause and was unchallenged by the defendant. Accordingly, the Court finds that the combined

---

[1]The Court conducted a hearing on the Motion to Suppress on July 29, 2010, at which the Government's Bosnian war expert, Michael MacQueen, testified. Tr. at 5-31. Although the above cases do not directly address whether opinion evidence should or should not be relied on based on the level of sophistication of the expert, and although the issuing magistrate judge did not have information on the level of expertise of the Government's expert on the face of the search warrant, the Court notes that Mr. MacQueen's compelling and extremely specific testimony lends credence to the reliability of the opinion evidence at issue. Id.

direct and opinion evidence in the Affidavit provided sufficient indicia of probable cause.

### 2. Nexus

Defendant next argues that the Affidavit supporting the search warrant failed to establish a connection between the evidence expected to be found and Defendant's home.  Defendant maintains that the sort of "generalized conclusions" provided in the Affidavit "are not enough to create the necessary nexus."  Specifically, Defendant points to paragraph 14 of Agent Clark's Affidavit which states that other investigations of former Bosnian police officers have yielded evidence of similar visa fraud, but notably fails to state that such evidence has generally been found in former Bosnian police officers' homes.  In response, the Government maintains that the Affidavit creates a common sense inference that Defendant would keep this type of evidence in his home, and in support, the Government points to past decisions holding that such an inference is permissible.

The party challenging the legality of a search conducted under a facially valid warrant bears the burden of showing a lack of probable cause.  United States v. De La

Fuente, 548 F.2d 528, 534 (5th Cir. 1977).[2]   Under Illinois v. Gates, 462 U.S. 213, 238 (1983), a reviewing court should evaluate the grant of a search warrant by looking to the "totality of the circumstances," with no single factor controlling.  A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.  Massachusetts v. Upton, 466 U.S. 727, 733 (1984).   A reviewing court should not interpret supporting affidavits in a "hypertechnical" manner, and doubtful cases "should be largely determined by the preference to be accorded to warrants."  United States v. Ventresca, 380 U.S. 102, 109 (1965).

The affidavit of a police officer seeking to obtain a search warrant must provide a magistrate judge with a substantial basis for determining the existence of probable cause.  See Gates, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.").  In particular, "[w]here a warrant to search a residence is sought, the affidavit must supply the

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

authorizing magistrate with a reasonable basis for concluding that Defendant might keep evidence of his crimes at his home, i.e., a 'safe yet accessible place.'" United States v. Kapordelis, 569 F.3d 1291, 1310 (11th Cir. 2009) (quoting United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir. 1999)).  The "common-sense realization that one tends to conceal fruits and instrumentalities of a crime" in the privacy of the home may suffice to allow the search of a person's residence when that person is suspected of criminal activity, since "few places are more convenient than one's residence for [such use]."  United States v. Green, 634 F.2d 222, 226 (5th Cir. Unit B. 1981).

In the recent Kapordelis decision, the Eleventh Circuit recited numerous cases that support the notion that, though "the affidavit should establish a connection between the defendant and the residence to be searched," the link need not be explicit. 569 F.3d at 1310 (quoting United States v. Martin, 297 F.3d 1308, 1314 (11th Cir. 2002)).  Relying on United States v. Anton, 546 F.3d 1355, 1358 (11th Cir. 2008) and United States v. Jenkins, 901 F.2d 1075, 1080-81 (11th Cir. 1990), the Court held that a search of a home is supported where there is evidence that a person possesses contraband of a "type normally expected to be hidden in [the] residence."  Kapordelis at 1310.  Moreover, the nexus between the items to be seized and a defendant's home "can be established circumstantially where contraband is capable of being hidden in

[the] residence." <u>Id.</u> at 1310; <u>see also</u> <u>United States v. Maestas</u>, 546 F.2d 1177, 1180 (5th Cir. 1977) ("[F]irsthand evidence in the affidavit that materials subject to seizure were in the premises where the officers proposed to conduct their search . . . is not always necessary.  For instance, evidence that a defendant has stolen material which one normally would expect him to hide at his residence will support a search of his residence.").

Although the affidavits supporting the search warrants in <u>Kapordelis</u>, <u>Anton</u>, and <u>Jenkins</u> each included a statement to the effect that the sort of contraband sought was typically stored by suspects in their homes, the focus of the courts' analyses was not on whether these words, "in the home," were included in the affidavits, but whether the totality of the circumstances made it likely that the type of evidence sought would be found in the place the police intended to search.  <u>See</u> <u>Kapordelis</u> at 1310; <u>Anton</u> at 1358; <u>Jenkins</u> at 1080-81.  The Eleventh Circuit has followed this logic in upholding searches for several types of contraband.  <u>See, e.g.,</u> <u>Kapordelis</u> (child pornography); <u>Anton</u> (firearms); <u>Jenkins</u> (loot from a bank robbery); <u>Maestas</u> (5th Cir. 1977) (blank checks and forged identification cards).  It follows, then, that according to the Tenth Circuit, "magistrate judges may draw their own reasonable conclusions, based on the Government's affidavit and the 'practical considerations of

everyday life,' as to the likelihood that certain evidence will be found" in the defendant's home.  United States v. Biglow, 562 F.3d 1272, 1282-83 (10th Cir. 2009).

Defendant contends that the search warrant must be invalid because it contains no allegations of fact linking his past military service to his residence.  In support, Defendant recites decisions requiring an explicit nexus, all from courts outside this Circuit.  See, e.g., Washington v. Thein, 977 P.2d 582, 589 (D. Wash. 1999) ("[A] nexus between the items to be seized and the place to be searched must be established by specific facts."); United States v. Rosario, 918 F. Supp. 524, 531 (D. R.I. 1996) ("To permit . . . self-avowed expertise . . . without any other factual nexus . . . would be an open invitation to vague warrants."); United States v. Schultz, 14 F.3d 1093, 1097 (6th Cir. 1994) ("[A]n officer's training and experience . . . cannot substitute for the lack of evidentiary nexus . . . .").  Defendant also points to the fact that, though the relevant Eleventh Circuit authority, see cases cited supra pp. 14-16,  focuses on the totality of the circumstances to determine whether a nexus exists, the affidavits in each of these cases all made some explicit linkage between the evidence to be seized and the place to be searched.

Turning to the present facts, Defendant is challenging the validity of the search warrant because, as he correctly notes, the Affidavit does not include a statement indicating that Bosnian ex-military usually keep mementos of their military service *in the home*. Defendant's contention that a nexus must be explicitly stated, however, is misguided. As an initial matter, binding precedent in this Circuit, while not on all fours, indicates that an explicit nexus "is not always necessary." Maestas at 1180.

Additionally, the Supreme Court has mandated that courts reviewing issued search warrants employ a deferential approach and use "common-sense." See Massachusetts v. Upton, 466 U.S. 727, 733 (1984); Illinois v. Gates, 462 U.S. 213, 238 (1983). The Eleventh Circuit has repeatedly indicated that the home is the most likely hiding place for types of evidence as diverse as child pornography, firearms, and forged checks. Common sense dictates that personal mementos are even more likely to be keep at home. More specifically, items belonging to Bosnian ex-military, kept perhaps as reminders of heritage or proud service, must necessarily be admired in private since they are also proof of immigration fraud. Agent Clark identified Defendant's home as the place to be searched. While Agent Clark may not have stated in the Affidavit that Bosnian ex-military usually keep mementos from their military service in their homes, the reasonable conclusion, drawn from a common-

18

sense inference that mementos are usually kept at home, is that there was probable cause to believe Defendant stored mementos of his military service in his residence.

Finally, the Eleventh Circuit has held that "[i]nsignificant and immaterial misrepresentations or omissions will not invalidate a warrant." United States v. Sims, 845 F.2d 1564, 1571 (11th Cir. 1988).  Based on the foregoing, a common-sense inference establishing nexus is not only permissible but appropriate.  The Court finds, therefore, that the lack of an explicit, but inferable, link between the evidence to be seized and Defendant's residence is, at worst, an immaterial omission, and not a fatal defect.

In sum, the opinion evidence from Agent Clark and the expert Mr. MacQueen, together with direct evidence from personnel and court records provided in the Affidavit are sufficient to establish probable cause to search Defendant's home.  The common-sense conclusion that people who keep mementos of their military service, as Bosnian ex-military were shown likely to do, tend to store these items in their homes suffices to establish the necessary link between the evidence that was sought and the place the officers intended to search.  Therefore, it is **RECOMMENDED** that Defendant's Motion to Suppress Evidence [18-2] be **DENIED**.

3. Application of *Leon*

Finally, the Government argues that even if the search was improperly authorized, the officers executing the search relied on the search warrant in good faith.

Under the "good-faith exception" set forth by the Supreme Court in United States v. Leon, 468 U.S. 897 (1984), evidence secured under an ultimately defective search warrant should not be suppressed when the officer executing the search relied on the warrant in good faith. "The Leon good faith exception applies in all but four limited sets of circumstances." United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002) (citing Leon, 468 U.S. at 923). The relevant exceptions asserted by Defendant, numbers (3) and (4), instruct that the good faith exception does not apply: (3) where the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) where a warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923. Good faith is measured by that which a reasonably well-trained officer, under the circumstances, would perceive – and not by the standards applicable to lawyers – in order "to deter police misconduct rather

than to punish the errors of judges." United States v. Taxacher, 902 F.2d 867, 872 (11th Cir. 1990) (quoting Leon at 916).

Defendant argues that the affidavit's failure to properly establish a nexus between the evidence to be seized and Defendant's home resulted in the search warrant application containing insufficient probable cause and being facially deficient. Defendant also invokes a "slippery slope" argument, warning that upholding this search warrant would fail to deter officers from their "prolific use of factually unsupported averments" and their submission of "technically truthful yet inherently deficient affidavits." The Court disagrees with each of Defendant's arguments.

First, Defendant's insistence that the affiant's omission of three words, "in the home," creates an insurmountable barrier to establishing both probable cause and facial sufficiency is hollow. The testimony of Mr. MacQueen and Agent Clark at the July 29, 2010 hearing establishes that Agent Clark was aware of multiple instances of similar immigration fraud prosecutions, and knew that searches of the defendants' homes in those cases had successfully uncovered the type of evidence he sought. Tr. at 32-34. Additionally, Agent Clark stated that he had reviewed the search warrant applications from similar, successful cases, and that he "used those applications as sort of a go-by for establishing what [he] considered to be probable cause for the search

21

warrant." Tr. at 33. The Court finds, therefore, that Agent Clark believed he had composed an affidavit that contained the proper indicia of probable cause. Agent Clark's subsequent execution of the search warrant, therefore, was done in good faith.

Additionally, the search warrant is not facially deficient. Although nexus between the evidence sought and Defendant's residence is not explicit, the warrant is not deficient on its face; the search warrant clearly identifies a specific place to be searched – Defendant's home – and a specific type of evidence to be seized – mementos and artifacts confirming Defendant's military service in Bosnia. See Leon, 468 U.S. at 923 (a warrant is "facially deficient" when it "fail[s] to particularize the place to be searched or the things to be seized"). Agent Clark reasonably believed that the search warrant authorized by the magistrate judge was valid, and the Leon good-faith exception applies.

Second, Defendant's argument concerning the impact on deterrence of police misconduct by not suppressing the evidence in this case is misplaced. The Leon good-faith exception is grounded on the idea that, absent obvious errors, the Fourth Amendment prohibition on unreasonable searches is not violated when an officer conducts a search pursuant to a facially valid search warrant. See Leon at 908-10. Although Defendant argues that the executing officer's actions are not shielded by the

good-faith exception, and thus, implicitly, that the officer has acted in bad faith, Defendant has offered no evidence of any improper behavior or bad faith on the part of the Government.  Defendant merely asserts that three words are missing.  Based on the review of similar, valid affidavits on which Agent Clark and Mr. MacQueen relied and of the testimony of Agent Clark and Mr. MacQueen at the July 29, 2010 hearing, the Court finds that, at most, Agent Clark carelessly overlooked making nexus explicit.  To the extent this omission was in error, it does not amount to an act of "bad faith" which Leon aims to deter.

In conclusion, the officers executed the search in good faith with the knowledge that, just as other affidavits had supported valid search warrants, the very similar affidavit supporting the search warrant in this case would be sufficient.  The search was executed pursuant to a facially valid warrant, and it produced the very type of evidence it aimed to uncover.  Under Leon, the fruits of the search should not be suppressed.[3]  The Court, therefore, **RECOMMENDS** that, even if the search warrant

---

[3]While the Court believes the above analysis is a straightforward and complete application of Leon to the facts of this case, the Court also finds it notable that the search warrants in all but one of the cases Defendant cites in his various briefs in support of the proposition that the Government's affidavit failed to establish probable cause were ultimately upheld under the Leon good-faith doctrine.

lacked probable cause linking the evidence to Defendant's residence, the Motion to Suppress Evidence [18-2] should be **DENIED** under <u>Leon</u>.

## **RECOMMENDATION**

Because the affidavit supporting the search warrant established probable cause linking the evidence to Defendant's home, and because the facially valid search warrant was relied on in good faith by the officers executing the search, the undersigned **RECOMMENDS** that Defendant's Motion [18] be **DENIED.**

**IT IS SO RECOMMENDED** this 28th day of October, 2010.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE